**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

RAYMOND RICCIO,

        Plaintiff,

v.

        Case No. 11-12711

        Hon. Victoria A. Roberts

BANK OF AMERICA and METROPOLITAN
LIFE INSURANCE COMPANY (MetLife),

        Defendants.
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR PAYMENT OF LTD BENEFITS OR IN THE INTERIM A JUDGMENT, PLAINTIFF'S ATTORNEY FEES, JUDGMENT INTEREST, AND 4% INCREASE PER YEAR IN MONTHLY BENEFITS**

**I.    INTRODUCTION**

Plaintiff filed the above motion (Doc. #36). Defendants say that Plaintiff's motion is untimely under Federal Rule of Civil Procedure 59(e) and Local Rule 54.1.2.

The timeliness of Plaintiff's motion is contingent on whether there is a binding settlement agreement. The parties dispute many terms of the "settlement agreement;" neither party signed it, although the parties represented to the Court that their dispute was settled. The alleged settlement agreement included the payment of Long Term Disability ("LTD") benefits for a two-year period.

Plaintiff disputes that a valid settlement agreement exists on the terms proposed by Defendants.  Nonetheless, Plaintiff seeks to enforce the parties' alleged agreement for payment of LTD benefits, attorney fees, prejudgment interest, and 4% increase per year in monthly benefits against Defendants, but not a release.

1

Defendants seek to enforce the same terms as Plaintiff, but also a release.

Plaintiff's motion is **DENIED**. There is no enforceable settlement because there was no "meeting of the minds" on all material terms.

## II.    BACKGROUND

On June 22, 2011, Plaintiff filed a Complaint against Defendants for denying his LTD benefits. On April 20, 2012, the parties filed cross dispositive motions. Following discovery proceedings and prior to trial, both parties agreed to discuss settlement.

On August 9, 2012, the Court held a phone conference to discuss settlement. Defendants said they were willing to:

> (1) approve long term disability benefits for 24 months (Oct. 22, 2008 through Oct. 21, 2010) under Bank of America Long Term Disability Benefits Plan's definition of disability, applicable during that time period (unable to earn more than 80% of Predisability earnings at his own occupation for any employer in the local economy ("own occupation");
>
> (2) consider the claim for periods after October 21, 2010 under the Plan's definition of disability applicable during that time period, i.e., unable to earn more than 60% of indexed predisability earnings from any employer in the local economy for which a claimant is reasonably qualified taking into account training, education, and experience ("any occupation"). Advising Plaintiff to submit additional medical or other documentation to MetLife for consideration of additional benefits payments;
>
> (3) submit Plaintiff's contention that he was entitled to a 4% increase per year on the payment of the LTD benefit to MetLife for consideration under its administrative claim procedures. MetLife would respond to Plaintiff's contention, and if Plaintiff was not satisfied with the final MetLife determination, Plaintiff could bring that issue before the Court for resolution;
>
> (4) Allow Plaintiff  to file hiss motion for recovery of attorney fees or pre-

judgment interest.

(Def. Reply Ex. A at 6-7).

Plaintiff did not agree to the terms of Defendants' proposed settlement. However, during another phone conference on November 19, 2012, both parties informed the Court that they reached agreement. The parties said they would work out the details.

On November 20, 2012, the Court entered an "ORDER OF DISMISSAL" stating that both parties settled, that the case was "DISMISSED WITH PREJUDICE," and Plaintiff retained the right to seek attorney fees and prejudgment interest. (Pl.'s Mot. Ex. A).

On December 11, 2012, defense counsel emailed a General Release and Settlement Agreement ("Proposed Agreement") to Plaintiff's counsel outlining the Defendants' understanding of the settlement. Plaintiff's counsel responded with this email: "My client has never agreed on a settlement: [Y]ou just stated that you would pay the first two years of his benefits. Why would he sign a release?"

Defense counsel replied:

MetLife agreed to settle the case by paying the first two years of benefits, processing the claim for the remaining period after the two years, agreed to your filing a motion for attorney fees, considering the 4% claim and the prejudgment interest. In return, Plaintiff agrees to not pursue any other claims he might have against MetLife and Bank of America, such as claims for emotional distress, lost wages, any claims for bad faith claims processing, etc.

3

> The Order dismissing the case reflects that the case has been settled. In the past, even when I have a case and agree to pay the entire claim, I need to obtain a release. Nevertheless, in drafting the General Release and Settlement Agreement I tried to include everything that was agreed upon.

(Def. Reply Ex. B).

Attorney for Plaintiff did not address the validity of Defendants' recital; a final settlement agreement was not confirmed.

On March 16, 2013, almost four months after the Court's Order of Dismissal, Plaintiff contacted Defendants with a proposed Order of Settlement which differed from Defendants' Proposed Settlement:

> The Court being fully advised in the premises, the Plaintiff filed a Complaint to have his long-term disability benefits restored. The Plaintiff and Defendant each filed briefs with the court arguing their positions as to the Plaintiff's benefits. The Defendant, after the briefs were filed, agreed that the Plaintiff is entitled to his long-term benefits under first definition of disability under the LTD contract. The sum of those benefits is $_____ which shall be paid forthwith to the Plaintiff, though his attorney's office. The Plaintiff will file new medical records with the Defendant to consider his continued disability under the LTD contract after the expiration of the first definition of disability. The Plaintiff believes that he is entitled to judgment interest, attorney fees and 4% increase each year and the Plaintiff shall file a brief on those issues within 30 days from the date of this Order, the Defendant will have time to file an Answer to the Plaintiff's motion within the time allowed by the Federal Court Rules and the court has considered this matter.

(Def. Reply Ex. C).

On March 20, 2013, Attorney for Defendants replied by email stating:

> the settlement in this case should be confirmed by the General Release and Settlement Agreement I previously forwarded to you on December 11,

2012...[a]dditionally, your proposed Order is not correct. We agreed that Riccio's claim for the alleged 4% escalator would first be submitted to MetLife under it administrative process. Thereafter, assuming that MetLife denied Riccio's claim, he could bring the issue before the Court.

Once again, no mutual agreement was established concerning the parties' settlement.

On June 30, 2013, Plaintiff filed this motion requesting the Court to enter judgment against Defendants to pay the two years of LTD benefits, attorney fees, judgment interest, and 4% increase per year in monthly benefits.

### III.   STANDARD OF REVIEW

This Court has equitable power to enforce a settlement agreement, *Brock v. Scheuner Corp.,* 841 F.2d 151, 154 (6th Cir. 1988). A valid settlement agreement, like a contract, requires a meeting of the minds on all the essential terms. *Burkhardt v. Bailey,* 260 Mich. App. 636, 655 (2004). "A meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Kamalnath v. Mercy Mem. Hosp. Corp.,* 194 Mich. App. 543, 548 (1992).

In exercising its equitable power to enforce a settlement, such exercise is restricted to cases where there is no dispute or ambiguity as to either the entry into, or the terms of the agreement. *Kukla v. National Distillers Products Co.,* 483 F.2d 619, 621 (6th Cir. 1973). To enforce a settlement, a "district court must conclude that agreement has been reached on all material terms." *Brock,* 841 F.2d at 154. *See also Therma-Scan Inc. v. Thermoscan, Inc.,* 217 F.3d 414, 419-420 (6th Cir. 2000).

**IV.    ANALYSIS**

Defendants argue that all the essential terms of the proposed settlement agreement were agreed upon when the Court entered an order dismissing the action with prejudice. Defendants say Plaintiff must sign the agreement, which includes a release clause in order to receive two years of LTD benefits.

Plaintiff says a release was not a condition of settlement; and thus, Plaintiff refuses to sign the agreement as written.

While the parties agreed to settle the underlying dispute, there is no agreement concerning whether a material term -- a release -- should be included in the agreement; thus it is not enforceable.  See *Therma-Scan,* 217 F.3d at 420 (holding that a settlement agreement which does not include all material terms is not enforceable).

In *Therma-Scan*, the Sixth Circuit held that it was reversible error for a district court to enforce a settlement agreement when it was clear that there was not a meeting of the minds on all material terms. *Id.* at 420. The case involved a patent dispute. After filing summary judgment motions, the parties agreed to settle their case with the assistance of the district court. Once the parties reached a settlement, the district court attempted to summarize the material terms on the record. The settlement agreement included language indicating that the defendant would "prominently" display its brand name on its products and that this display did not have to be of a particular size, as long as it was "just visible." *Id.* at 419.

After the district court dismissed the case with prejudice, the parties disagreed on the meaning of the language in the agreement. Each interpretation would have different settlement outcomes.

The Sixth Circuit concluded there was no valid settlement; there was no meeting of the minds on essential terms. It held that enforcement of the settlement agreement was an abuse of discretion. The Sixth Circuit voided the settlement and reinstated the action to its status prior to settlement discussions.

*Therma-Scan* is controlling. As in *Therma-Scan*, this "subsequent dispute makes clear that each heard only what it wanted to hear" concerning the alleged settlement agreement, *Thema-Scan, Inc.,* 217 F.3d at 420 The emails establish that when Defendants identified a release as a condition of settlement, Plaintiff adamantly stated that he did not agree to a release. Afterwards, Plaintiff drafted his own proposed settlement agreement which excluded release language.

Nothing before the Court shows that the parties' discussed the Release during either phone conferences. (Def. Reply Ex. B at 2). And, the Order of Dismissal does not refer to a release. Even though the parties informed the Court that they reached a settlement, it is now not clear to the Court what each party had in mind.

Because a settlement agreement was never consummated between the parties which contained all of the material terms, *Audi v. Shokan Coachworks, Inc.,* 04-70626, 2006 WL 2811272 (E.D. Mich. Sept. 28, 2006) ("The Court must have a measure of confidence and certainty that the parties have in fact [sic] a meeting of the minds as to

7

all material terms."), the order enforcing the settlement is stricken.  The parties' dispute will resume to the status prior to the Court's dismissal.

Accordingly, Plaintiff's motion is **DENIED**.

**IT IS ORDERED.**


   /s/ Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated:  November 26, 2013

| |
|---|
| The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on November 26, 2013.<br><br>S/Linda Vertriest<br>Deputy Clerk |

8